

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL.
ATTORNEY GENERAL

October 20, 1975

The Honorable Jerry (Nub) Donaldson
Chairman, Financial Institutions Committee
House of Representatives
State Capitol Building
Austin, Texas

Opinion No. H- 723

Re: The effect of section 6.14 of the Texas Savings and Loan Act upon the authority of political subdivisions to invest surplus funds in savings and loan associations.

Dear Representative Donaldson:

On behalf of the House Standing Committee on Financial Institutions you have asked:

> In view of Section 6.14 of the Texas Savings and Loan Act (Art. 852a R.C.S.), are there any restrictions upon the authority of political subdivisions of this state to invest surplus funds in savings accounts in savings and loan associations operating in this state?

The Texas Savings and Loan Act provision to which you have referred contains very broad language. It reads in part:

> Administrators, executors, guardians, trustees and other fiduciaries of every kind and nature; counties, cities, towns and all other political subdivisions or instrumentalities of this State; insurance companies doing business in this State; business and nonprofit corporations; charitable or educational corporations or associations; banks, credit unions and all other financial institutions are hereby specifically authorized and empowered to invest funds held by them in savings accounts of any association operating under this law or any Federal association. . . .

p. 3094

If applied in its most comprehensive sense, the foregoing language would authorize fiduciaries, trustees, and public officers to invest the funds entrusted to them in savings and loan association savings accounts without regard to limitations imposed by the Texas Probate Code, the Texas Trust Act, or laws governing the selection of depositories for public monies. However, we do not believe that result was intended nor that the provision can be given that effect.

On January 1, 1964, the Texas Savings and Loan Act, article 852a, V. T. C. S., succeeded and replaced former article 881a which governed building and loan associations (Acts 1963, 58th Leg., ch. 113, p. 269). The title of the bill enacting the new law provides:

> An Act arranging the Statutes of this State
> affecting savings and loan associations and their
> operations in appropriate Chapters and Sections
> into a consistent whole and under a single Act;
> defining certain terms; providing a method of
> forming associations; stating the powers, duties
> and qualifications of directors, officers and
> members of such associations; fixing the cor-
> porate power thereof; regulating the loans,
> investments and ownership of real property by
> such associations; providing for savings accounts
> and fixing rights and obligations in regard thereto;
> providing for the computation of earnings, trans-
> fers to loss reserves, dividends and surplus of
> such associations; providing for the supervision
> and regulation of such associations, their books
> and records, accounting practices, statements,
> reports, audits and examinations; providing for
> discontinuance of violations and receivership;
> limiting the rights of foreign associations to do
> business as a savings and loan association in this
> State; providing for conversion into Federal
> associations; providing for conversion into State
> associations and reorganization, merger, con-
> solidation and voluntary liquidation of such
> associations; exempting savings accounts from

securities laws; authorizing acknowledgements
to be taken before members and employees of
associations who are notaries public; providing
for closing of places of business; permitting
associations to act to avoid losses; providing
for fees to be collected by savings and loan
commissioner; requiring all associations
authorized to conduct a savings and loan busi-
ness to conform to this Act; providing that
outstanding shares, stock, share accounts and
investment certificates (except Permanent
Reserve Fund Stock) shall be considered as
savings accounts; prohibiting the issuance of
stock or shares not authorized by this Act;
providing for ad valorem taxation of the
property of such associations; permitting
rule-making procedures to be instituted under
certain conditions; providing hearing pro-
cedures; providing for judicial review; pro-
viding penalties for slander of an association,
embezzlement, declaring greater dividends
than earned, failing to comply with law, sup-
pressing evidence and disclosures by examiners;
repealing all laws in conflict herewith; providing
for severability of the different Chapters or
parts of Chapters so that the unconstitutionality
of one or more shall not affect the remainder of
the Act; providing an effective date; and
declaring an emergency.

There is no indication contained in the title of such a sweeping change in the
law regarding the investment of entrusted funds as the above-quoted language
from section 6.14 of the Act would imply. Furthermore, that section of the
Act, contains this additional language:

If upon the effective date of this Act the
shares and share accounts of associations
operating under Article 881a of the Revised
Civil Statutes of 1925, as amended, are legal

> investments for any particular business,
> organization, corporation, fiduciary or
> political subdivision, the savings accounts
> of associations subject to terms of this Act
> shall be deemed to be legal investments to
> the same extent as such shares and share
> accounts.

This last sentence of section 6.14 could perhaps be given an interpretation consistent with a broad construction of the earlier language, but a statute should be construed in a manner that will render it constitutional, if possible. 53 Tex. Jur. 2d Statutes § 158. A broad interpretation of the section 6.14 language would cause the title of the enactment to be misleadingly narrow and, in our opinion, unconstitutional. Tex. Const. art. 3, § 35; C. Haymon Construction Company v. American Indemnity Co., 471 S. W. 2d 564 (Tex. Sup. 1971; Harris County Fresh Water Supply District No. 55 v. Carr, 372 S. W. 2d 523 (Tex. Sup. 1963); 53 Tex. Jur. 2d Statutes § 59.

In our opinion, section 6.14 of article 852a, V. T. C. S., was meant — and should be construed — only to signify that after passage of the Act savings accounts in savings and loan associations would be legal investments for those fiduciaries and public bodies permitted by other law to invest in similar securities. See e.g. V. T. C. S. arts. 836 and 6243e,§ 23; Prob. Code § 389; but see V. T. C. S. arts. 2544 et seq., 2559 et seq. We do not believe the provision, in itself, gives any political subdivision a power to make investments unaffected by legal restrictions found elsewhere in the law of this State.

Accordingly, we answer your question in the affirmative. Without examining the entire body of law relative to financial transactions by all the various types of political subdivisions, it is impossible for us to specify all legal restrictions which might apply to the investment authority of such entities, but we call to your attention article 3, section 52 of the Texas Constitution, and the statutes previously noted.

## SUMMARY

Section 6.14 of article 852a, V.T.C.S., the Texas Savings and Loan Act, does not authorize political subdivisions to invest in savings accounts of savings and loan associations without regard to legal restrictions found elsewhere upon the disposition of public monies.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee